**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>**MILTON MULDROW, JR.,**</td><td>*</td><td></td></tr>
<tr><td>    **Plaintiff,**</td><td>*</td><td></td></tr>
<tr><td>**v.**</td><td>*</td><td>**Case No.: PWG-13-1200**</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>**REBECCA M. BLANK,**<br>    **Acting Secretary,**</td><td>*</td><td></td></tr>
<tr><td>    **United States Department of Commerce,**</td><td>*</td><td></td></tr>
<tr><td>    **Defendant.**</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Milton Muldrow, Jr. began work at the United States Department of Commerce in February, 2011, as a program management specialist. His primary responsibility was to manage a scholarship program fostering American competitiveness in science by providing educational opportunities to promising aspiring scientists. When he encountered difficulties succeeding in his job, he attributed them to the discriminatory motives of his supervisors. In August, 2011, believing that working conditions were intolerable, he quit his job. He has filed a pro se lawsuit that is less than a model of clarity, but appears to state claims for hostile work environment based on sex and race, discrimination based on sex, interference with FMLA rights, and retaliation. Defendant, the Acting Secretary of the Department of Commerce, has filed a motion to dismiss

or, alternatively, for summary judgment.[1]  Finding that Plaintiff only has stated a plausible retaliation claim, I dismiss his other claims.

## I.    BACKGROUND[2]

Plaintiff worked for the United States Department of Commerce ("the Agency") as a Program Management Specialist from February 2011 through August 23, 2011.  Compl. 1, ECF No. 1; Def.'s Mem. 4.  He "was hired to manage" the Dr. Nancy Foster Scholarship Program. Compl. 3.  His supervisors were three women: Louisa Koch, Audrey Trotman, and Chantell Haskins.  Def.'s Mem. 3; *see* Compl. 1–2.

In his Complaint, Plaintiff identifies various difficulties he had working with his supervisors.  He claims that they misinformed him about the program he was managing and "withheld detailed budgetary information," thereby "preventing [him] from making accurate projection and historical reporting," as was "expected of" him.  Compl. 1.  He also alleges that he "was yelled at and berated publicly in the office."  *Id.* at 2.  Specifically, according to Plaintiff, when he sought guidance on how to "process[] the applications for the scholarship," his supervisors "reprimanded [him] openly in the office, yelling . . . ."  *Id.*  And, he "was yelled at and reprimanded in meetings for not producing a quality PowerPoint . . . ."  *Id.* at 3.  He also

---

[1] I consider Defendant's Motion, which is fully briefed, *see* ECF Nos. 21, 21-1, 23 & 31, as a Motion to Dismiss.  *See Scapes v. McKimm*, No. WDQ-09-2231, 2009 WL 4726613, at *1 n.6 (D. Md. Dec. 1, 2009) ("This motion was captioned as a motion to dismiss or for summary judgment.  As there has been no discovery, the Court will consider this a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."); *see also Linnemann v. City of Aberdeen*, No. MJG-12-2021, 2013 WL 3233526, at *2 (D. Md. June 25, 2013) ("Summary judgment should not be granted 'where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986))). I find that a hearing is unnecessary in this case.  *See* Local Rule 105.6.

[2] For purposes of considering Defendant's Motion to Dismiss, this Court accepts the facts that Plaintiff alleged in his Complaint as true.  *See Aziz v. Alcoac*, 658 F.3d 388, 390 (4th Cir. 2011).

claims that he "was pressured by Ms. Haskins and Ms. Trotman to discriminate on [sic] male Nancy Foster Applicants solely because they were male," and claims that a scholarship applicant was reconsidered when Plaintiff informed his supervisors that the applicant was "partially black." *Id.* at 4. Additionally, he alleges that Ms. Haskins "often stated Louisa [Koch] just wanted to help the 'white' Nancy Foster graduates" and Ms. Haskins "stated 'white men don't need help.'" *Id.* at 3. Plaintiff also claims that "Audrey Trotman asked [him] if [he] was 'comfortable speaking with women' in a closed door meeting." *Id.* at 2.

According to Plaintiff, he learned "[i]n late May/Early June 2011" that "Chantell Haskins and OED [Office of Education] leadership" were "shifting money around" and "illegally" using the funds from the Dr. Nancy Foster Scholarship Program for another program. Compl. 3. He claims that his supervisors "demanded" that he "not . . . speak of the budget" when he made presentations to other programs so as not to reveal that "the budget numbers did not add up." *Id.* Declining to do so, Plaintiff states that he "reported the illegal use of funds." *Id.*

Plaintiff also complains about his interactions with his coworkers. He states that his "wife i[s] white," and alleges that "[t]he staff at one time discussed black men dating white women disapprovingly." Compl. 3. Although Plaintiff does not disclose his race, it appears from the Complaint and Defendant's Memorandum that he is black or African American. *See id.*; Def.'s Mem. 1. According to Plaintiff, as a result of the environment at work, he "[u]nderwent paid psychiatric therapy and [was] diagnosed with 'Anxiety Disorder – Related to Stress Reaction at Place of Employment.'" Compl. 7.

On June 13, 2011, Plaintiff sent an email to his supervisors requesting leave for the birth of his child six months in advance of his wife's due date, pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615. Compl. Ex. E, at 4, ECF No. 1-5. He wrote: "To give clear

and advanced notice, and for proper planning, I plan to take up to 12 weeks off proceeding the birth of my newborn. This will be towards the beginning of the new year." *Id.* In a response written the same day, his supervisor wrote: "As the birth of a child requires planning so does covering your responsibilities as the Graduate Scholarship Program Manager for GSP and the Nancy Foster Scholarship Programs. Please develop a proposal with options as to how your duties will be performed during your 12 week absence." Compl. Ex. E, at 5. Plaintiff claims that he "was humiliated" one month later when "Haskins and another employee discuss[ed] [his] FMLA request openly and negatively so that everyone could hear." Compl. 5. On July 15, 2011, his supervisor asked again by email:

> What is the status of your plan to cover your FMLA at the start of the new year? Applications for the graduate programs are due in January and February. What is the plan for getting these applications processed and selections made by April 2012? Please provide your written plan by Thursday, July 21, 2011.

Compl. Ex. D, at 2, ECF No. 1-4. And on July 20, 2011, after Plaintiff asked for suggestions about how to cover his work, his supervisor responded with a snarky comment that she "ha[d] no suggestions" but was "curious to find out how [his] duties [would] be performed during [his] absence." Compl. Ex. E, at 3.

According to Plaintiff, he "was never approved for this protected use of FMLA," even though he "provided an FMLA medical certification upon request." Compl. 4. Plaintiff claims that he ultimately was "deemed . . . AWOL." *Id.* at 5. However, Defendant states that Plaintiff's employment ended August 23, 2011, Def.'s Mem. 4, and Plaintiff does not refute the date, while Plaintiff's child was not due until "the beginning of the new year," Compl. Ex. E, at 4. Plaintiff's "wife ultimately delivered premature twins," Compl. 7, but it still appears that Plaintiff's employment ended a little more than two months after he provided advance notification of his request for FMLA leave and well before the twins were born.

Additionally, Plaintiff claims that he repeatedly sought to use, but was denied, FMLA leave to be home with his wife for her "'severe' morning sickness," which "incapacitated [her] some mornings." Compl. 5. Plaintiff alleges that he "submitted a medical certification for this on Aug. 12 after they asked for one," and "[t]he certification stated [he] would need to stay with her intermittently to care for her." *Id.* As Plaintiff sees it, he was denied this FMLA leave in August 2011, "soon after [he] report[ed] misuse of funds and hostile work environment." *Id.* at 3 & 6.

Plaintiff alleges that "[a]s a result of the above actions, [he] was forced to quit [his] job due to constructive discharge." *Id.* at 7. Specifically, he contends that he resigned because he "could not do [his] job while budget information was hidden" or while he "was 'scapegoated'" to cover the "illegal use of . . . funds"; and because he "was subject to hostile work environment." *Id.*

As Defendant noted in her motion, and as my own review confirms, Plaintiff's Complaint is far from clear. As best I can discern, in bringing this lawsuit, Plaintiff claims that he was subjected to a hostile work environment based on sex and race, Compl. 2 & 5; he was discriminated against based on sex and his FMLA rights were interfered with when he was asked to develop a plan to cover his work while he was out on FMLA leave, *id.* at 4–5; and he was denied FMLA leave in retaliation for "reporting misuse of funds and hostile work environment," *id.* at 5–6. Defendant moves to dismiss Plaintiff's Complaint in its entirety.[3] Def.'s Mot. 1.

---

[3] Although Defendant does not address Plaintiff's claim for interference with FMLA rights, to protect against possible abuses of the privilege to proceed in Forma Pauperis, i.e., without paying filing fees, 28 U.S.C. § 1915 mandates that a district court "shall dismiss" a case upon a finding that the Complaint "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B). Therefore, I will consider the sufficiency of this claim as well.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012).  This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).  To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6).  Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79.  *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.  Notably, when reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Because *pro se* lawsuits, such as Mr. Muldrow's, "represent the work of an untutored hand requiring special judicial solicitude," the Court must "construe *pro se* complaints liberally," such that "litigants with meritorious claims [are] not . . . tripped up in court on technical niceties." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985) (citing *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978)). Even so, "[d]istrict judges are not mind readers," and "[e]ven in the case of *pro se* litigants, they cannot be expected to construct full blown claims from sentence fragments . . . ." *Id.* at 1278. Therefore, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits," and this Court need not "conjure up questions never squarely presented to [it]." *Id.*

## III.    DISCUSSION

As noted, liberally construed, Plaintiff presents claims of hostile work environment based on race or sex, discrimination based on sex, interference with FMLA rights, and retaliation, each of which I will consider in turn.

### A.  Hostile Work Environment Based on Race or Sex

Plaintiff complains generally about the information that his supervisors provided to him about the program he was managing and the frequency with which they "yelled at and berated [him] publicly." Compl. 1–2. He also claims that he "was humiliated" when one of his supervisors discussed his FMLA leave request with another employee in a location that the conversation could be overheard. *Id.* at 5. As for the hostility being "based on sex," Plaintiff alleges that "Audrey Trotman asked [him] if [he] was 'comfortable speaking with women' in a closed door meeting," which he views as "unwarranted and reprehensible," *id.* at 2, and he claims that his supervisors took race into account and "pressured" him to consider gender on scholarship applications, *id.* at 3–4. Plaintiff argues that the hostility also was based on his race,

because he has a "white" wife and "[t]he staff at one time discussed black men dating white women." *Id.* at 3.

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] sex . . . ." 42 U.S.C. § 2000e-2(a)(1). To be actionable under 42 U.S.C. § 2000e-2(a)(1), discrimination need not be "economic" or "tangible." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citations and quotation marks omitted). Rather, "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986) (internal brackets and quotation marks omitted)). To state an actionable claim for hostile work environment based on race or sex, a plaintiff must allege that he or she was subjected to "'offending conduct'" that (1) "'was unwelcome,'" (2) "'was because of'" his or her sex or race, (3) "'was sufficiently severe or pervasive to alter the conditions of [his or] her employment and create an abusive working environment,'" and (4) "'was imputable to [his or] her employer.'" *Westmoreland v. Prince George's Cnty., Md.*, 876 F. Supp. 2d 594, 614 (D. Md. 2012) (quoting *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 331 (4th Cir. 2011)) (discussing sex-based harassment) (internal citation and quotation marks omitted)); *see EEOC v. Xerxes Corp.*, 639 F.3d 658, 668–69 (4th Cir. 2011) (discussing race-based harassment); *Banhi v. Papa John's USA, Inc.*, No. RWT-12-665, 2013 WL 3788573, at *8 (D. Md. July 18, 2013) (same).

Defendant challenges the second and third elements, contending that "Plaintiff's hostile work environment claims fail because he cannot establish that the Agency's conduct was based

upon his race, sex, or prior protected activity," Def.'s Mem. 30, and because they "are void of the requisite severity and pervasiveness, especially given that Plaintiff never suffered any formal discipline at the hands of Agency management," *id.* at 2. In Defendant's view, "Plaintiff's allegations run the gamut of ordinary office interactions between supervisor(s) and employee." *Id.* at 31. Defendant insists that, "[w]hile Plaintiff has listed numerous incidents during his short tenure with the Agency, the cited incidents wholly lack the requisite severity to establish a hostile work environment." *Id.* According to Defendant, "the only comment of a race or sex-based nature that was actually directed at Plaintiff was Ms. Trotman's question regarding whether or not he was comfortable taking guidance from women," and "[t]his isolated, one-time question simply would not constitute a hostile work environment for a reasonable employee." *Id.*

In relation to the second element, "'[a]n employee is harassed or otherwise discriminated against "because of" his or her gender [or race] if, "but for" the employee's gender [or race], he or she would not have been the victim of the discrimination.'" *Davis v. Dimensions Health Corp.*, 639 F. Supp. 2d 610, 614 (D. Md. 2009) (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000) (citation omitted)); *see Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998) (discussing race-based harassment); *Tawwaab v. Va. Linen Serv.*, 729 F. Supp. 2d 757, 775 (D. Md. 2010) (same). This means that the employee "must show that he is 'the individual target of open hostility because of [his race or] sex.'" *Davis*, 639 F. Supp. 2d at 614 (quoting *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003)); *see Tawwaab*, 729 F. Supp. 2d at 776.

Here, the majority of Plaintiff's allegations are unrelated to his race or gender; he simply claims that the working environment was hostile, largely due to the fact that he allegedly was

"yelled at and berated publicly" on more than one occasion at work. *See* Compl. 2. Even if these acts amounted to harassment, which is extremely unlikely, given the high bar set for actionable offensive conduct, *see EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008), they do not state a claim for hostile work environment based on race or sex because Plaintiff has not alleged that they happened "because of" Plaintiff's race or gender. *See Tawwaab*, 729 F. Supp. 2d at 775–76; *Davis*, 639 F. Supp. 2d at 614.

Plaintiff does claim that his supervisors "pressured" him "to discriminate" against men who applied for a scholarship he managed "solely because they were male," and that his supervisors considered one applicant's race in determining his eligibility. Compl. 4. Additionally, he claims that one of his supervisors said that another supervisor "just wanted to help the 'white' Nancy Foster graduates" and "stated 'white men don't need help.'" *Id.* at 3. These comments certainly pertain to race and gender abstractly, but they do not pertain to Plaintiff or his race or gender. Consequently, these allegations, like Plaintiff's more general allegations of hostility, do not state a claim for hostile work environment because Plaintiff has not alleged that *his* race or gender was the impetus for their occurrence. *See Tawwaab*, 729 F. Supp. 2d at 775–76; *Davis*, 639 F. Supp. 2d at 614.

It is plausible that when one of Plaintiff's supervisors asked him if he "was 'comfortable speaking with women' in a closed door meeting," Compl. 2, the supervisor posed the question because of Plaintiff's gender. It also is plausible that when, according to Plaintiff, "[t]he staff at one time discussed black men dating white women," *id.* at 3, the staff did so because of Plaintiff's race and the race of Plaintiff's wife. Therefore, I will consider whether Plaintiff has alleged, through these acts, a hostility that was "sufficiently severe and pervasive." *See Hoyle*,

650 F.3d at 331; *see also Xerxes Corp.*, 639 F.3d at 668–69; *Westmoreland*, 876 F. Supp. 2d at 614.

Conduct is "sufficiently severe and pervasive" when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citation to *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986), omitted). Additionally, the plaintiff must "subjectively [have] felt that the work environment was hostile or abusive," and "the work environment [must] objectively [have been] hostile or abusive to a reasonable person." *Engler v. Harris Corp.*, No. GLR-11-3597, 2012 WL 3745710, at *5 (D. Md. Aug. 28, 2012) (citing *Harris*, 510 U.S. at 22). The Court determines whether the work environment was sufficiently hostile by considering "the totality of the circumstances, which include: (1) the 'frequency of the discriminatory conduct'; (2) 'its severity'; (3) 'whether it is physically threatening or humiliating, or a mere offensive utterance'; and (4) 'whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23); *see Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (same). Notably,

> [i]ntermittent acts of harassment are insufficient to establish that a hostile work environment is severe or pervasive. Indeed, Title VII does not mandate civility in the workplace. Further, a supervisor's strict management style or degree of supervision is not evidence of actionable harassment. However, a work environment can be considered hostile if it is "consumed by remarks that intimidate, ridicule, and maliciously demean the status of women."

*Engler*, 2012 WL 3745710, at *5 (internal citations omitted) (discussing the "'high bar'" for offensive conduct set in *Sunbelt Rentals, Inc.*, 521 F.3d at 315). Consequently, "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca*

*Raton*, 524 U.S. 775, 788 (1998) (citation omitted); *Romeo v. APS Healthcare Bethesda, Inc.*, 876 F. Supp. 2d 577, 593 (D. Md. 2012) (quoting *Faragher*).

Here, the two acts that Plaintiff identified that plausibly were made because of Plaintiff's race or gender do not establish a hostile work environment that is severe or pervasive. *See Engler*, 2012 WL 3745710, at *5. Rather, these are "offhand comments" and "isolated incidents" that are not "extremely serious." *See Faragher*, 524 U.S. at 788. Therefore, Plaintiff has failed to state a claim for hostile work environment based on race or gender. *See id.*; *Hoyle*, 650 F.3d at 331; *Xerxes Corp.*, 639 F.3d at 668–69; *Westmoreland*, 876 F. Supp. 2d at 614.

### B. Discrimination Based on Sex

Plaintiff claims that he was subjected to sex-based discrimination when he requested FMLA leave for the birth of his child and his supervisor "replied with an extremely "condescending email asking how [he] proposed to cover [his] work during [his] absences," which was followed by two more emails to the same effect. *Id.* at 4–5. To state a claim for discrimination based on sex, Plaintiff must allege that:

> (1) he is a member of a protected class; (2) he was performing at a level that met his employer's legitimate expectations at the time of the adverse employment action; (3) he suffered an adverse employment action; and (4) his employer treated similarly situated employees outside his protected class more favorably.

*Dones v. Donahoe*, ---- F. Supp. 2d ----, 2013 WL 6551335, at *5 (D. Md. Dec. 12, 2013) (citing *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (Title VII), *aff'd on other grounds*, ---- U.S. ----, 132 S. Ct. 1327 (2012)). If Plaintiff makes this showing and his employer proffers that it had a legitimate nondiscriminatory reason for the adverse employment action it took, then Plaintiff must "'demonstrate[] that the employer's proffered permissible reason for

taking an adverse employment action is actually pretext for discrimination.'" *Id.* (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004)).

Defendant only challenges the third element. In Defendant's view, Plaintiff has not alleged an adverse employment action because Plaintiff's allegation that his supervisor repeatedly asked him to develop a plan to cover his work while he took FMLA leave was "merely a regurgitation of general office happenings." Def.'s Mem. 12 & 15–16.

An adverse employment action for purposes of a discrimination claim is an action that "adversely affects the terms, conditions, or benefits of the plaintiff's employment." *McNeil v. Loyola Univ.*, No. WDQ-13-1473, 2014 WL 320494, at *6 (D. Md. Jan. 27, 2014); *see Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 64 (2006). "The 'typical requirements for a showing of an "adverse employment action"' are allegations of 'discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion.'" *McNeil*, 2014 WL 320494, at *6 (quoting *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999), *abrogated on other grounds by Burlington N.*, 548 U.S. at 67). Asking Plaintiff in a demeaning way to develop a written proposal for covering his work in his absence may have been unwarranted and it certainly was unappreciated, but it does not "affect[] the terms, conditions, or benefits" of his employment.[4] *See id.* Consequently, Plaintiff fails to allege that "he suffered an adverse employment action." *See Dones*, 2013 WL 6551335, at *5.

---

[4] In contrast, denying Plaintiff FMLA leave, as Defendant did when Plaintiff sought to stay home to care for his wife when she experienced severe morning sickness, may constitute an adverse employment action. *See Allen v. Rumsfeld*, 273 F. Supp. 2d 695, 706 (D. Md. 2003) ("[D]enial of Plaintiff's leave requests qualifies as an adverse employment action" because it "resulted in Plaintiff not receiving pay she otherwise would have received."); *Scott-Brown v. Cohen*, 220 F. Supp. 2d 504, 511 (D. Md. 2002) ("[T]he denial of advanced sick leave, on our facts [in which plaintiff had to take unpaid leave but ultimately was fully compensated for her leave time], affected a benefit of Plaintiff's employment," such that it was an adverse employment action.).

Further, Plaintiff has not pleaded adequately the second or fourth element of his sex-based discrimination claim.[5]  To establish his performance level at the time the alleged adverse employment action occurred, for purposes of the second element, Plaintiff claims that one supervisor "lauded [his] performance" for one presentation he gave, Compl. 3, and that he "received outstanding ratings" in 2009, 2010, and 2011," *id.* at 8.  However, the evaluations on which he was rated "outstanding" were from April 1, 2008 through March 31, 2011, months before he requested FMLA leave.  *See* Compl. Ex. F, at 2, 4 & 6, ECF No. 1-6.  Moreover, Plaintiff states that he became a program manager in February 2011, *see* Compl. 1, such that the evaluations almost exclusively assess his performance in another position that he held prior to becoming a program manager.  Therefore, he has not alleged sufficient facts to show that his overall performance was "at a level that met his employer's legitimate expectations *at the time of the adverse employment action.*"  *Dones*, 2013 WL 6551335, at *5 (emphasis added).

For the fourth element, Plaintiff is required to allege that "his employer treated similarly situated employees outside his protected class more favorably."  *Id.*  After alleging that his supervisor asked him, through various emails, to propose how his work would be covered while he was out on FMLA leave, Plaintiff surmises that "[i]f a pregnant woman asked for FMLA [the supervisor] never would have asked her to come up with a proposal and not offered any suggestions or help," and that his supervisor would not have "sent a woman a similar email."

---

However, Plaintiff does not claim that this denial of FMLA leave was sex-based discrimination; rather, he views it as retaliation, as discussed below.  And, Plaintiff's employment ended before Defendant either granted or denied his request to take FMLA leave for the birth of his children.

[5] As for the first element, it is clear that Plaintiff, as a male, is a member of a protected class. *See Reed v. Md. Dep't of Human Resources*, No. ELH-12-472, 2013 WL 489985, at *17 (D. Md. Feb. 7, 2013) ("'While Congress' particular focus in amending Title VII to prohibit discrimination on the basis of 'sex' was to ensure equal employment rights for women, the Supreme Court has interpreted the Act's broad language to protect both men and women.'" (quoting *Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 749–50 (4th Cir. 1996))).

Compl. 5.  This is nothing more than speculation, and falls short of pleading a plausible claim.  A "plaintiff may not . . . rely on naked assertions, speculation, or legal conclusions." *Ward v. Wal-Mart Stores, Inc.*, No. JKB-13-1011, 2014 WL 279678, at *2 (D. Md. Jan. 22, 2014) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 556–57 (2007)).  Therefore, Plaintiff has not alleged sufficiently the fourth element of his race discrimination claim.  *See id.*  Plaintiff has failed to state a claim for discrimination based on sex.  *See Dones*, 2013 WL 6551335, at *5; *Coleman*, 626 F.3d at 190.

### C.  Interference with FMLA Rights

Plaintiff also views his supervisor's repeated emails about how to cover his work in his absence as "an attempt to discourage [him] from using the FMLA."  Compl. 5. The FMLA was enacted, in part, "to entitle employees to take reasonable leave for medical reasons."  29 U.S.C. § 2601(b)(1)–(2).

> To make out a prima facie case of interference under the FMLA, 29 U.S.C. § 2617, an employee must first "prove that she was afflicted with an FMLA-qualifying condition, because otherwise she did not have any right under the Act with which her employer could have interfered." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 384 (4th Cir. 2001). The employee then must show (1) "that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights"; and (2) that "the employee has been prejudiced by the violation." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); *see Reed v. Buckeye Fire Equip.*, 241 Fed. App'x 917, 924 (4th Cir. 2007); *see also Rodriguez v. Smithfield Packing Co.*, 545 F. Supp. 2d 508, 516, 523 (D. Md. 2008) (stating that "[t]o establish unlawful interference with an entitlement to FMLA benefits, an employee must prove that: (1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled"; noting that a plaintiff cannot recover if the "violation caused no harm").

*Bosse v. Balt. Cnty.*, 692 F. Supp. 2d 574, 584 (D. Md. 2010).

Notably, "[a]ctions that constitute interfering with an employee's FMLA rights include . . . discouraging an employee from using such leave . . . ."  *Id.* at 585 (quotation marks and

citations to *Glunt*, 123 F. Supp. 2d at 870, and 29 C.F.R. § 825.220(b), (c) omitted). For the violation to prejudice the employee, the employee must lose compensation or benefits or suffer "'other monetary losses . . . "as a direct result of the violation," § 2617(a)(1)(A)(i)(II),'" or be "denied 'employment, reinstatement, [or] promotion, § 2617(a)(1)(B).'" *Id.* (quoting *Ragsdale*, 535 U.S. at 89).

Plaintiff may have shown that Defendant discouraged his use of FMLA leave by asking him repeatedly about how his work would be covered in his absence. But, Plaintiff resigned from his position before Defendant either granted or denied this FMLA leave request, and he does not claim that, as a result of Defendant's purported interference, he "incurred any losses, monetary or otherwise." *See Wonasue v. Univ. of Md. Alumni Ass'n*, ---- F. Supp. 2d ----, 2013 WL 6158375, at *15 (D. Md. Nov. 22, 2013) (concluding that plaintiff's "interference claim fail[ed] as a matter of law" where "for the short span of time Plaintiff remained employed after her request for leave was denied [and before she resigned], she does not claim that she incurred any losses, monetary or otherwise"). *Cf. Wells v. Gates*, 336 F. App'x 378, 384–85 (4th Cir. 2009) ("Based on the financial impact, we cannot say that a reasonable worker would not be dissuaded from engaging in protected conduct by the loss of this compensation from denial of sick leave."). Indeed, although Plaintiff does allege constructive discharge, he does not contend that the purported FMLA interference led to his constructive discharge. *See* Compl. 7; 29 U.S.C. § 2617(a)(1)(A)(i)(II) (requiring prejudice to be "as a direct result of the violation"). Consequently, he has not alleged any prejudice or harm that would support a claim for FMLA interference. *See Bosse*, 692 F. Supp. 2d at 585.

### D. Retaliation

As noted, Plaintiff claims that, when he sought to take FMLA leave in August 2011 to care for his wife while she had "'severe' morning sickness," his request was denied because he recently had complained about the purportedly hostile work environment and "reported" his supervisors' "illegal use of funds." Compl. 3 & 5–6. 42 U.S.C. § 2000e-3(a) provides that it is unlawful for an employer "to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." Although "[t]he plain meaning of the statutory language provides protection of an employee's opposition activity when the employee responds to an actual unlawful employment practice," the Fourth Circuit has "[r]ead[] the language generously to give effect to its purpose" and "held that opposition activity is protected when it responds to an employment practice that the employee *reasonably believes* is unlawful." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006).

To state a claim for retaliation under Title VII, Plaintiff must allege sufficiently that (1) he "'engaged in protected activity,'" (2) the employer "'took adverse action against [him],'" and (3) "'a causal relationship existed between the protected activity and the adverse employment activity.'" *Westmoreland v. Prince George's Cnty., Md.*, 876 F. Supp. 2d 594, 612 (D. Md. 2012) (quoting *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004)). The standard for establishing an adverse employment action in a retaliation claim "is less 'strenuous' than the standard in a discrimination claim," because "[t]he adverse employment action in a retaliation case need not affect an employee's 'terms or conditions of employment.'" *Madock v. McHugh*, No. ELH-10-2706, 2011 WL 3654460, at *26 (D. Md. Aug. 18, 2011) (quoting *Burlington N. &*

*Santa Fe Ry. v. White*, 548 U.S. 53, 68, 70 (2006)), *aff'd*, 469 F. App'x 200 (4th Cir. 2012).

Rather,

> "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " To illustrate, the Supreme Court has described "[a] supervisor's refusal to invite an employee to lunch" as a trivial, non-materially adverse action, but has said that "excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement," is conduct that "might well" be materially adverse.

*Id.* (quoting *Burlington N.*, 548 U.S. at 69 (citations and quotation marks omitted)).

Even with the lower bar, none of the following constitutes an adverse employment action in a retaliation claim: failing to issue a performance appraisal; moving an employee to an inferior office or eliminating the employee's work station; considering the employee "AWOL"; or issuing a personal improvement plan, "an 'Attendance Warning,'" a verbal reprimand, "a formal letter of reprimand," or "a proposed termination." *Rock v. McHugh*, 819 F. Supp. 2d 456, 470–71 (D. Md. 2011). However, when an employee experiencing pregnancy complications requests to work from home, "the denial of [the] request . . . might . . . be a material harm" because it "might deter one from participating in protected activity." *Brockman*, 217 F. App'x at 207 ("assum[ing], without deciding, that [denying such a request] was an adverse employment action"). Also, it is well established that constructive discharge is a form of adverse employment action. *Boone v. Goldin*, 178 F.3d 253, 255–56 (4th Cir. 1999), *abrogated on other grounds by Burlington N.*, 548 U.S. at 67; *Cohens*, 2013 WL 3944451, at *5; *Banhi*, 2013 WL 3788573, at *6.

Plaintiff certainly engaged in protected activities when he complained of a hostile work environment and reported an alleged misuse of government funds. *See Wright v. Sw. Airlines*, 319 Fed. App'x 232, 233 (4th Cir. 2009). Additionally, he characterizes his resignation as

constructive discharge. "Constructive discharge occurs when an employee resigns because the 'employer deliberately makes the working conditions intolerable in an effort to induce the employee to quit.'" *Banhi v. Papa John's USA, Inc.*, No. RWT-12-665, 2013 WL 3788573, at *6 (D. Md. July 18, 2013) (quoting *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186–87 (4th Cir. 2004)). Therefore, to prove constructive discharge, a plaintiff must show "(1) the deliberativeness of [the employer's] actions, motivated by . . . bias, and (2) the objective intolerability of the working conditions." *Honor*, 383 F.3d at 186–87. Of import, "[d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Cohens v. Md. Dep't of Human Resources*, No. WDQ-11-3419, 2013 WL 3944451, at *6 (D. Md. July 30, 2013) (quoting *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994)). The Fourth Circuit has stated that a plaintiff's allegations that

> her supervisors yelled at her, told her she was a poor manager and gave her poor evaluations, chastised her in front of customers, and once required her to work with an injured back . . . , even if true, do not establish the objectively intolerable working conditions necessary to prove a constructive discharge.

*Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004).

Plaintiff may have alleged that his supervisors acted with "deliberateness" insofar as he claims that Ms. Haskins was "trying to dissuade [him] from taking FMLA," and he may have alleged bias in his contention that Ms. Haskins's emails about work coverage were sex-based discrimination. *See Honor*, 383 F.3d at 186–87. But, he has not alleged that his working conditions were intolerable. *See id.* Rather, Plaintiff only has shown that he was not pleased with his working conditions, i.e., the requirement that he formulate a plan for his responsibilities to be covered in his absence and provide a written proposal to his supervisor. *See Cohens*, 2013 WL 3944451, at *6. Therefore, he has not alleged sufficiently that he was constructively

discharged for his resignation to be an adverse employment action. *See Honor*, 383 F.3d at 186–87; *Cohens*, 2013 WL 3944451, at *6.

Conversely, the denial of FMLA leave with regard to pregnancy complications constitutes an adverse employment action for purposes of a retaliation claim as it could discourage a reasonable employee from engaging in a protected activity. *See Brockman*, 217 F. App'x at 207; *Madock*, 2011 WL 3654460, at *26. Indeed, in arguing that "Plaintiff cannot establish that he suffered an adverse employment action," Defendant explicitly limits its contentions to Plaintiff's other claims (that he was discriminated against and subjected to a hostile workplace), and does not argue that the denial of Plaintiff's FMLA leave request was not an adverse employment action. *See* Def.'s Mem. 16. Additionally, in arguing that "Plaintiff fails to establish a *prima facie* case of retaliation," Defendant again discusses all of Plaintiff's claims except his claim that the denial of FMLA leave in August 2011 was retaliatory. *See id.* at 18–19.

As for the causal relationship, Defendant contends, and Plaintiff does not dispute, that Plaintiff did not file his administrative complaint about the alleged hostile work environment until August 30, 2011, *see* Def.'s Mem. 11, such that it followed, rather than preceded, the denial of FMLA leave. Defendant also argues more specifically, without dispute, that "no retaliatory animus could have prompted the Agency's actions at issue in the instant Complaint prior to August 4, 2011, when [the EEO counselor first interviewed Ms. Haskins and] the Agency first had knowledge of the claims." Def.'s Mem. 18. Further, Plaintiff does not suggest that he made any earlier complaint. Therefore, the denial could not have been causally linked to that protected activity. *See Wright*, 319 Fed. App'x at 233.

In contrast, with regard to the alleged misuse of funds, Plaintiff claims that he was denied leave "soon after" he reported the alleged misuse of funds. Compl. 6. Moreover, because

Plaintiff did not learn about the purported misuse of funds until late May or early June 2011, he could not have reported it before that time.  *See id.* at 3.  Thus, the denial of Plaintiff's FMLA leave request in mid-August 2011 could not have followed Plaintiff's protected act by more than about two months.  This "temporal proximity" is sufficient to allege a causal connection.  *See Burgess v. Bowen*, 466 F. App'x 272, 283 (4th Cir. 2012) ("[V]ery little evidence of a causal connection is required to establish a prima facie case [of retaliation]; temporal proximity between the protected activity and the employer's adverse action alone will suffice.") (citations and quotation marks omitted).  Therefore, Plaintiff has stated a claim for retaliation, but only insofar as he claims that Defendant retaliated against him for reporting the alleged misuse of funds by denying him FMLA leave.  *See Wright*, 319 Fed. App'x at 233.

## IV.     CONCLUSION

In sum, Plaintiff's allegations against Defendant only support one colorable claim, a claim for retaliation, but only insofar as he claims that Defendant retaliated against him for reporting the alleged misuse of funds by denying him FMLA leave.  I will DENY Defendant's Motion to Dismiss as to Plaintiff's retaliation claim.  All other claims are subject to dismissal.  Accordingly, I will GRANT Defendant's Motion to Dismiss as to Plaintiff's claims of hostile work environment based on race or sex, discrimination based on sex, and interference with FMLA rights.

A separate order shall issue.

Dated: <u>March 10, 2014</u>                                    <u>        /S/                </u>
                                                                    Paul W. Grimm
                                                                    United States District Judge

lyb